UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

MICHAEL GERARD CONGDON,

    Plaintiff,

v.

OFFICER LENKE, OFFICER T. OLIVER, and
FAIRFIELD POLICE DEPARTMENT,

    Defendants.

Case No. CIV 08-1065RJB

ORDER ON
DEFENDANTS' MOTION
TO DISMISS AND
MOTION FOR
SUMMARY JUDGMENT

This matter comes before the court on the Defendants' Motion to Dismiss (Dkt. 29) and on the Defendants' Motion for Summary Judgment (Fed.R.Civ.P. 56(c)) (Dkt. 35). The court has considered the relevant pleadings and the file herein.

PROCEDURAL HISTORY

On May 5, 2008, plaintiff filed a civil case, pro se, against Officer Lenke, Officer Oliver, and the City of Fairfield Police Department. Dkt. 1. In his complaint, the plaintiff alleges that he suffered injuries to his head and eye after Officer Lenke and Officer Oliver allegedly beat him while detaining and arresting him. Dkt. 1. On January 21, 2009, the case was assigned to the undersigned judge. Dkt. 10. On May 4, 2009, the defendants filed their answer, which asserted 24 defenses. Dkt. 19.

1. MOTION TO DISMISS

On January 4, 2010, the defendants moved for dismissal on the basis that the plaintiff has failed to respond to discovery. Dkt. 29. In the alternative, the defendants requested that the Court compel the plaintiff to respond to discovery. Dkt. 29. The Court's Scheduling Order required the parties to have

ORDER
Page - 1

completed discovery by October 15, 2009, and required any dispositive motions to be filed and served by January 5, 2010. Dkt. 20. The plaintiff did not respond to the defendants' discovery requests.

On October 28, 2009, the Court ordered the plaintiff to provide complete responses to Defendants' Request for Production of Document[s] to Plaintiff Michael Gerard Congdon (Set One) [Dkt. 22-2, at 1-7]; to Defendants' Request for Production of Document[s] to Plaintiff Michael Gerard Congdon (Set One) [Dkt. 22-2, at 9-21]; and to Defendants' Special Interrogatories to Plaintiff Michael Gerard Congdon (Set One) [Dkt. 22-2, at 23-27]. Dkt. 27. In that order, the Court further informed the plaintiff that if he failed to properly and completely respond to the discovery requests by November 30, 2009, the Court would consider a request by defendants to impose sanctions, which could include monetary sanctions or dismissal of the case, or both. Dkt. 27. The plaintiff has never responded to the defendants' discovery and has failed to comply with the Court's order. The Court should dismiss the plaintiff's claims on this basis alone.

The defendants requested that the Court dismiss the plaintiff's claims because of the plaintiff's refusal to participate in discovery, and the defendants have also requested monetary sanctions against the plaintiff in the amount of $600.00 for preparing and bringing the instant motion. Dkt. 29. Monetary sanctions against the plaintiff are inappropriate because he has proceeded *in forma pauperis* (Dkt. 11) and he appears to have decided not to prosecute his case. Therefore, the defendants' request for monetary sanctions should be denied; however, the Defendants' Motion to Dismiss should be granted. In the alternative, the plaintiff's case should be dismissed with prejudice on the Defendants' Motion for Summary Judgment (Dkt. 35), as discussed below.

2. MOTION FOR SUMMARY JUDGMENT

A. PROCEDURAL HISTORY

On January 5, 2010, the defendants filed a Motion for Summary Judgement (Dkt. 35), and contended that (1) the defendants are not liable for violation of the plaintiff's Eight Amendment rights against "cruel and unusual punishment"; (2) Officer Lenke and Officer Oliver committed no constitutional violation under the Fourth Amendment or are at least entitled to qualified immunity because their conduct was reasonable; (3) the City of Fairfield is not liable to the plaintiff under the Fourth Amendment because the plaintiff has not alleged a policy, custom, practice, or act of ratification that would give rise to *respondeat*

*superior* liability; and (4) the plaintiff is barred from asserting any state law claims against the City of Fairfield or its police officers because he has not complied with the California Government Claims Act. Dkt. 35. On January 8, 2010, this Court notified the plaintiff of his responsibility in responding to the Defendants' Motion for Summary Judgment. Dkt. 42. The plaintiff has not responded; however, the plaintiff claims generally in his complaint (Dkt. 1) and his deposition (Dkt. 37, Exhibit A) that the defendants violated his constitutional rights and he seeks to recover damages pursuant to 42 U.S.C. § 1983.

B. FAILURE TO RESPOND TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

When a party the plaintiff is suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), plaintiff cannot simply rely on what his complaint says. Instead, plaintiff must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Fed. R. Civ. P. 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If plaintiff does not submit his own evidence in opposition, summary judgment, if appropriate, may be entered against him. If summary judgment is granted, plaintiff's case will be dismissed and there will be no trial. *See Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

Here, the defendants filed several declarations, including the Declaration of Officer Troy Oliver (Dkt. 39), the Declaration of Officer Robert Lenke (Dkt. 38), and the Declaration of Matthew A. Lavrinets. The plaintiff has not responded and has not set out specific contrary facts in declarations, depositions, answers to interrogatories, or authenticated documents. Because the plaintiff has not followed the applicable procedure, his claims should be dismissed. Alternatively, his claims should also be dismissed on the merits, the reasoning for which is discussed below.

C. FACTS

Robert Lenke and Troy Oliver are police officers employed by the City of Fairfield and both were so employed on February 1, 2008. Dkt. 34, p. 2. On February 1, 2008, Officer Oliver initiated a probation search of a mobile home located at 1427 West Texas Street, Unit 2, in Fairfield, California. Dkt. 34, p. 2. Prior to the probation search, Officer Oliver had received reports from an adjacent U-Haul business and from the property manager at 1427 West Texas Street that there had been a large amount of foot traffic surrounding Unit 2 during both day and night. Dkt. 34, p. 2. The property manager at 1427

West Texas Street informed Officer Oliver that Unit 2 was leased to Lorry Berry, and Officer Oliver then learned and confirmed that Ms. Berry was on probation and therefore subject to search and seizure. Dkt. 34, p. 2.

When Officer Oliver and other Fairfield police officers arrived on the scene to search Ms. Berry's unit, Officer Oliver noticed a green Chevy Camaro parked in the driveway in front of Unit 2, California license plate number 2WAE720. Dkt. 34, p. 2; Dkt. 37, Exhibit A, p. 41-2. The Chevy Camaro belonged to Michael Congdon. Dkt. 34, p. 2. Upon arrival at Unit 2, the police officers knocked on the front door and Ms. Berry and another person answered the door. Dkt. 34, p. 2. The officers had them come outside and sit down. Dkt. 34, p. 2. The officers heard more people inside of the mobile home, and the officers then opened the front door, announced themselves and directed everyone still in the mobile home to come outside. Dkt. 34, p. 2. In response to the officers' direction, Mr. Congdon and another person exited from the rear of the mobile home, and the officers also seated them in front of the home. Dkt. 34, p. 2.

Officer Oliver then searched Ms. Berry's mobile home pursuant to her probation search clause. Dkt. 34, p. 2. Inside the home the officers found various items of drugs and drug paraphernalia, including methamphetamine, multiple syringes, a scale, and plastic bags. Dkt. 34, p. 2. During Officer Oliver's search, some of the people who had exited the home, including Mr. Congdon, filled out Field Identification cards and were released from the scene. Dkt. 34, p. 2; Dkt. 37, Exhibit A, p. 49. After Mr. Congdon was released from the scene, he walked across the street to a gas station and purchased cigarettes. Dkt. 37, Exhibit A, p. 50.

While at Unit 2, Officer Oliver noticed, in plain view, inside Mr. Congdon's Chevy Camaro parked in front of Unit 2, several large pieces of copper tubing in the back seat area, one of which was U-shaped and had a large valve in its center. Dkt. 34, p. 3. Officer Oliver determined that the size of the pipes were consistent with commercial use, and, while at the scene, Fairfield Code Enforcement Officer David James indicated he knew that similar copper piping had recently been stolen from a Chipotle restaurant in Fairfield. Dkt. 34, p. 3.

Officer James then responded to the Chipotle restaurant and confirmed that the model number on the pipe in the back of the Camaro matched the model number on the replacement pipe at the Chipotle restaurant. Dkt. 34, p. 3. Officer Oliver then concluded that the copper tubing in the back of the Camaro

could be stolen, and he entered the Camaro and removed three large pieces of the tubing with valves on them. Dkt. 34, p. 3. Inside the Camaro, Officer Oliver also found a pair of bolt cutters, which he determined were consistent with those used to cut chains and/or locks that secure copper pipes and valves to commercial buildings. Dkt. 34, p. 3. At this pont, Mr. Congdon observed the officers investigating the copper tubing in the rear of his Camaro, and he proceeded across the street with the intent of stopping the investigation. Dkt. 37, Exhibit A, p. 51.

Mr. Congdon approached the officers at the Camaro and yelled, "You need a fucking warrant to get in that car. Get out of my car." Dkt. 34, p. 3; Dkt. 37, Exhibit A, p. 56-7. Officer Oliver then immediately ordered Mr. Congdon to stop where he was, but Mr. Congdon continued to yell and taunt Officer Oliver and the other officers, yelling, "You have no right to be in my car. Get out of my car, you motherfuckers." Dkt. 34, p. 3.

Officer Oliver requested that Officer Lenke detain Mr. Congdon for further investigation. Dkt. 34, p. 3. Officer Lenke then approached Mr. Congdon and told him to put his hands behind his back, saying that he was going to be detained during the investigation, and Mr. Congdon replied, "Fuck that. You're not doing shit." Dkt. 34, p. 3. Officer Lenke then placed his hand on Mr. Congdon's left arm and began to place him in a control hold. Dkt. 34, p. 3-4; Dkt. 37, Exhibit A, p. 58. As Officer Lenke attempted to place Mr. Congdon in a control hold, Mr. Congdon clenched his right hand into a fist and began to swing it forward. Dkt. 34, p. 4; Dkt. 37, Exhibit A, p. 58-60. Fearing for Officer Lenke's safety, Officer Oliver then opened his expandable baton and shouted several orders at Mr. Congdon, such as "Quit resisting," and "Get on the ground." Dkt. 34, p. 4; Dkt. 37, Exhibit A, p. 58-61.

Meanwhile, Officer Lenke was trying to get Mr. Congdon under control but was unable to do so because Mr. Congdon was jerking around and swinging his arms. Dkt. 34, p. 4; Dkt. 37, Exhibit A, p. 61. Officer Oliver delivered a strike to Mr. Congdon's upper right thigh in an attempt to gain compliance from him and ordered him again to "Get on the ground," but Mr. Congdon failed to do so. Dkt. 34, p. 4; Dkt. 37, Exhibit A, p. 62. Officer Lenke, fearing for his safety, grabbed Mr. Congdon's arm and upper body and took him to the ground. Dkt. 34, p. 4; Dkt. 37, Exhibit A, p. 62. Officer Oliver attempted to deliver another strike to Mr. Congdon's right thigh area as Officer Lenke attempted to take him to the ground but, because Mr. Congdon was already headed toward the ground, Officer Oliver's strike hit him

in the right rib cage area. Dkt. 34, p. 4. As Officer Lenke brought Mr. Congdon to the ground, Mr. Congdon brought both arms tight to his body, bringing both hands under his body. Dkt. 34, p. 4.

Once Mr. Congdon was on the ground, he would not remove his right arm from underneath his body, which made Officer Oliver fearful that Mr. Congdon might be concealing a weapon toward the front of his body. Dkt. 34, p. 4. While he was on the ground, Mr. Congdon continued to thwart the efforts of the other police officers to detain him by kicking them, despite several orders given to him to stop resisting. Dkt. 34, p. 4.

Finally, four officers, including Officers Oliver and Lenke, were able to remove Mr. Congdon's right arm from underneath his body and place him in handcuffs. Dkt. 34, p. 4. Mr. Congdon was then handcuffed behind his back. Dkt. 34, p. 4. Mr. Congdon's handcuffs were double-locked and checked for tightness. Dkt. 34, p. 4. Mr. Congdon was then placed in the back of Officer Oliver's patrol vehicle and told that he was under arrest for resisting arrest and for interfering with the officers in an investigation. Dkt. 34, p. 4-5; Dkt. 37, Exhibit A, p. 67.

As Officer Lenke placed Mr. Congdon in the back of Officer Oliver's patrol vehicle, there was a small amount of blood on Mr. Congdon's forehead and scratches on his sunglasses. Dkt. 34, p. 5; Dkt. 37, Exhibit A, p. 67. Officer Lenke asked Mr. Congdon if he required medical treatment, and he declined; however, Officer Lenke asked the Fairfield Fire Department to respond and render first aid. Dkt. 37, Exhibit A, p. 69. The officers then proceeded with their investigation, but, while doing so, Officer Lenke saw Mr. Congdon attempting to slip his handcuffs under his feet and move his hands to the front of his body. Dkt. 37, Exhibit A, p. 71-74. Officer Lenke and Officer Oliver stated in their depositions that it is a serious officer safety issue to have an detainee with his hands cuffed in front of his body. Dkt. 34, p. 5.

Officer Lenke opened the door to the patrol vehicle and told Mr. Congdon to stop moving his hands to the front of his body and explained that he would have to remove Mr. Congdon from the patrol car and have him place his hands behind his back. Dkt. 34, p. 5. However, Mr. Congdon responded by saying, "No. Wait and minute," and by moving his body towards the opposite end of the seat from Officer Lenke. Dkt. 34, p. 5. Officer Lenke then attempted to pull Mr. Congdon from the car, but Mr. Congdon planted his feet in an attempt to prevent Officer Lenke from removing him from the car. Dkt.

34, p. 5.

Based on Mr. Congdon's continued efforts to prevent the officers from gaining control of him and the fact that he moved his cuffed hands to the front of his body, the officers decided to place him in a leg restraint. Dkt. 34, p. 5. The plaintiff continued to struggle, but, eventually, the officers were able to place the plaintiff in a leg restraint and return him to the backseat of the patrol vehicle, fastened to the floor board. Dkt. 34, p. 5. Officer Oliver then transported Mr. Congdon to Solano County Jail, to book him for resisting arrest and for interfering in a police investigation. Dkt. 34, p. 5-6. All the force that Mr. Congdon alleges that Officer Lenke and Officer Oliver used against him occurred before he arrived at the jail. Dkt. 37, Exhibit A, p. 76.

The plaintiffs's version of the facts, as expressed in his sworn complaint (Dkt. 1) and his deposition (Dkt. 37, Exhibit A), vary from the defendants' version of the facts in several respects, which are immaterial in this case. The plaintiff's version of facts varies in the following ways:

First, the plaintiff agrees that when he initially approached the officers investigating his vehicle he yelled, "You need a fucking warrant to get in that car. Get out of my car." Dkt. 34, p. 3; Dkt. 37, Exhibit A, p. 56-7. However, the plaintiff does not assert that in response to his yelling Officer Oliver then immediately ordered him to stop where he was. The plaintiff does not assert that he ignored Officer Oliver's order and continued to yell and taunt Officer Oliver and the other officers, yelling, "You have no right to be in my car. Get out of my car, you motherfuckers." Dkt. 34, p. 3. Second, the plaintiff recalls Officer Lenke placing his hand on the plaintiff's left arm and placing the plaintiff into a control hold, but the plaintiff does not recall the defendants' verison of the facts that prior to the control hold maneuver Officer Lenke approached the plaintiff and told him to put his hands behind his back, saying that he was going to be detained during the investigation, and that the plaintiff replied, "Fuck that. You're not doing shit." Dkt. 34, p. 3. Third, the plaintiff agrees with the defendants that as Officer Lenke executed the control hold maneuver the plaintiff swung his fist; however, the plaintiff maintains that Officer Oliver told him to make a fist in order to make it look like the plaintiff was "swinging on the officer," but the defendants contend that the plaintiff actually attempted to strike the officers. Dkt. 34, p. 4; Dkt. 37, Exhibit A, p.58-60. Fourth, the plaintiff contends that as he was being taken to the ground he was not resisting arrest and he brought his arms into his body only to protect the pain in his ribs after receiving

ORDER
Page - 7

Officer Oliver's second baton blow. Dkt. 34, p. 4; Dkt. 37, Exhibit A, p. 66. Fifth, while on the ground the plaintiff agrees that he refused to remove his right arm from underneath his body, but he contends that he did so because he needed to protect himself. Dkt. 34, p. 4; Dkt. 37, Exhibit A, p. 62. Sixth, the plaintiff asserts that once he was placed in the patrol vehicle it was necessary for him to move his cuffed hands to the front of his body because his handcuffs were too tight. Dkt. 37, Exhibit A, p. 67. Finally, the plaintiff's complaint (Dkt. 1) and deposition (Dkt. 37, Exhibit A) do not reflect the interaction that occurred when the officers decided to remove the plaintiff from the patrol vehicle to correct his front handcuff position. Nevertheless, the plaintiff does contend that as he was removed from the patrol vehicle the back of his head hit the ground. Dkt. 37, Exhibit A, p. 72-75. Due to his alleged head injury, he claims to have little awareness of events after he was taken out of the patrol vehicle and placed in leg restraints. Dkt. 37, Exhibit A, p. 75.

The variations in the facts presented by the plaintiff are immaterial because they do not overcome qualified immunity. The question of qualified immunity is determined from the perspective of a reasonable police officer in Officer Lenke and Officer Oliver's position, and the plaintiff's variations do not make the officers' actions any less reasonable. (See discussion of qualified immunity below.)

## STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)). The purpose of summary judgement is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If the moving party meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Id.* at 323.

To avoid summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 323. There is no genuine issue of fact for trial where the record,

taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-moving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight accorded particular evidence. *Celotex*, 477 U.S. at 323. Additionally, in civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988); *see also Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir.1995) (Unless it is absolutely clear that no amendment can cure the defect, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.).

D. DISCUSSION

As an initial matter, the plaintiff requests compensation from Officer Lenke, Officer Oliver, and the "Fairfield Police Department." Dkt. 1. Because the Fairfield Police Department is not the proper entity to bring as a defendant, this Court will assume that the plaintiff intended to bring the City of Fairfield, of which the Fairfield Police Department is a part, as a defendant instead of the Fairfield Police Department.

**1. Eighth Amendment Claims for "Cruel and Unusual Punishment."**

The plaintiff seeks to recover for damages he claims to have suffered as a result of the "cruel and unusual punishment" that Officer Lenke and Officer Oliver allegedly inflicted upon him when the officers detained him during a search of his vehicle. Dkt. 1. The defendants contend that the officers' actions are not subject to Eight Amendment liability for "cruel and unusual punishment" because the relevant Eighth Amendment protections apply only after a plaintiff's arrest and conviction. Dkt. 34.

Where an excessive force claim arises in the context of an arrest, detainment, or investigatory stop of a citizen, it is properly characterized as a claim invoking Fourth Amendment protections of the right "to be

secure in their persons...against unreasonable seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). It is after conviction that the Eighth Amendment serves as the primary source of substantive protection where the use of force is challenged as excessive. *Id.* at 395, nt. 10.

Here, the plaintiff claims to have been injured only during his detainment, before arrest and conviction. Dkt. 37, Exhibit A, p. 76. In that context, the plaintiff's claims invoke Fourth Amendment protections rather than Eighth Amendment protections. Accordingly, the plaintiff's Eighth Amendment claims against Officer Lenke, Officer Oliver, and the City of Fairfield should be dismissed.

**2. Qualified Immunity for Officer Lenke and Officer Oliver**

The defendants' motion is primarily based on their contentions that Officer Lenke and Officer Oliver committed no constitutional violation or are at least entitled to qualified immunity for their conduct. Dkt. 35. The plaintiff has not addressed the issue of qualified immunity directly, but claims generally that Officer Lenke, Officer Oliver, and the City of Fairfield are liable for the force used to detain him because that force was excessive. Dkt. 1; Dkt. 37, Exhibit A.

The plaintiff seeks to prove that the defendants violated his constitutional rights and he seeks to recover damages pursuant to 42 U.S.C. § 1983. In order to maintain an action for damages under § 1983, a plaintiff must prove that (1) the plaintiff was deprived of a federally protected right (2) by the defendant acting under color of state law, and (3) that as a proximate result of the deprivation (4) the plaintiff was injured. 42 U.S.C. § 1983.

Defendant police officers in a § 1983 action are entitled to qualified immunity from damages for civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.

In determining the reasonableness of the officer's conduct we balance "the nature and quality of

the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," and ask whether, under the circumstances, "including the severity of the crime at issue, the suspect poses an immediate threat to the safety of the officers or others, or whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Saucier*, 533 U.S. at 200-01. Qualified immunity also protects a defendant from having to bear the burdens of such pretrial matters as discovery. *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); s*ee also Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-73 (9th Cir. 1993).

In this case, Officer Lenke and Officer Oliver are immune from suit under the law of qualified immunity because their use of reasonable force in detaining the plaintiff did not violate clearly established law. Officer Lenke and Officer Oliver detained the plaintiff because they believed he was in possession of stolen property and because he approached them with aggressive behavior. The plaintiff admitted in his deposition that he swore at the officers and both verbally and physically attempted to avoid detainment. At that point, it was reasonable for the officers to view the plaintiff as a safety risk and use maneuvers to detain him. As the plaintiff struggled, he was hit with a baton and claims he then stopped resisting detainment and started protecting himself. Even if the plaintiff's later resisting was due to pain from the baton blow, the officers were nonetheless reasonable in interpreting the plaintiff's continued struggle as an attempt to resist arrest that presented a safety risk to themselves and others.

Further, once the plaintiff transferred his handcuffs to the front of his body it was then reasonable for the officers to see the plaintiff's position as a safety risk and a flight risk that needed to be corrected by placing the plaintiff in leg restraints. The plaintiff does not claim to have complied with the officers' requests and commands during that stage of his detainment. The officers used a reasonable amount of force to remove a noncompliant detainee from the patrol vehicle and to place him in leg restraints. It would not have been clear to a reasonable officer in Officer Lenke and Officer Oliver's position that their conduct was unlawful in the situation they confronted. Accordingly, Officer Lenke and Officer Oliver are immune from the plaintiff's Fourth Amendment claims under 42 U.S.C. § 1983 and those claims should be dismissed.

### 3. Fourth Amendment Claims against the City of Fairfield

The defendants argue that the City of Fairfield cannot be liable to the plaintiff because (1) the plaintiff has not alleged a policy, custom, practice, or act of ratification that would give rise to *respondeat superior* liability, and, alternatively, (2) because the individual officers did not violate the plaintiff's constitutional rights and municipal liability is contingent on the underlying violation of the plaintiff's rights. Dkt. 35. The plaintiff does not directly address these legal issues, but argues in general that Officer Lenke and Officer Oliver, employees of the City of Fairfield, used excessive force in detaining him and that the City should be liable for the officers' actions. Dkt. 1; Dkt. 37, Exhibit A.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 692 (1998) (emphasis in original). To state a valid claim under § 1983 for municipal liability, the plaintiff must not only allege a constitutional violation caused by the municipality, but must also allege either (1) that the violation occurred pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local government entity; or (2) that an official with final policy making authority committed or ratified the constitutional tort. *Id.* at 690.

Further, while the liability of municipalities does not turn on the liability of individual officers, the liability of municipalities is contingent on a violation of the plaintiff's constitutional rights. *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1992); *cert. denied*, 515 U.S. 1159 (1995). If the plaintiff has not suffered a constitutional violation at the hands of the individual police officers, the fact that departmental regulations or customs might have authorized the officers' acts is irrelevant. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Here, the City of Fairfield cannot be liable because the plaintiff has not alleged any facts to show the City's liability under a theory of *respondeat superior*. Further, the plaintiff has not alleged any facts that would show that the alleged violations of his rights were caused by a formal policy or longstanding practice or custom of the City of Fairfield, and he has not asserted that a City of Fairfield official with final policy making authority committed or ratified the alleged violations of his rights. Finally, because there is no liability of the individual officers, the City of Fairfield is not liable to the plaintiff. As a result, the plaintiff's

Fourth Amendment claims against the City of Fairfield should be dismissed.

### 4. Claims under State Law

The defendants contend that the plaintiff is barred from asserting any state law claims against the City of Fairfield or its police officers because he has not complied with the California Government Claims Act, which is a condition precedent to a suit against a public entity in California. The plaintiff has not responded, and has not asserted that he has complied with the California Government Claims Act.

California Government Code § 945.4 provides that a plaintiff may not bring a suit for money or damages against a public entity until a written claim has been presented to the public entity and has been acted upon by that entity. Cal. Gov. Code § 945.4. A plaintiff's failure to present a timely written claim to the public entity bars the plaintiff from bringing suit. Cal. Gov. Code §§ 911.2, 945.4. Additionally, a cause of action against a public employee or former public employee for injury allegedly resulting from an act or omission in the scope of his employment as a public employee is barred where an action against the employing public entity for such injury is barred. Cal. Gov. Code § 950.2 (referring to Cal. Gov. Code §§ 900 et seq., claim against public entities, Cal. Gov. Code §§ 945 et seq., actions against public entities). These requirements apply to all plaintiffs, including those who are incarcerated. Cal. Gov. Code § 945.9(c).

In any action where the claims presentation requirement applies, the plaintiff's complaint must allege facts demonstrating or excusing compliance with the claim presentation requirement. *State of California v. Superior Court*, 90 P.3d 116, 122 (2004). If the plaintiff fails to do so, then his complaint is subject to dismissal for failure to state sufficient facts to constitute a cause of action. *Id*.

Here, the plaintiff has not shown that he submitted a claim to the City of Fairfield for his injuries, nor has the plaintiff alleged facts demonstrating or excusing compliance with the claim presentation requirement. California law requires him to have done so in order to pursue any state law claims against the City of Fairfield or its police officers. Accordingly, any claims asserting the liability of the City of Fairfield, Officer Lenke, or Officer Oliver under state law tort principles should be dismissed.

Therefore, it is hereby **ORDERED** that the Defendants' Motion to Dismiss (Dkt. 29) is **GRANTED** in part and **DENIED** in part, as follows: the defendants' request that the claims be dismissed is **GRANTED** and the plaintiff's claims are **DISMISSED**; however, the defendants' request for monetary

sanctions is **DENIED**.  The Defendants' Motion for Summary Judgment (Fed.R.Civ.P. 56(c)) (Dkt. 35) is **GRANTED** and all of the plaintiff's claims against defendants Officer Lenke, Officer Oliver, the City of Fairfield, and the Fairfield Police Department are **DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all Counsel of record and to any party appearing pro se at said party's last known address.

DATED this 4th day of February, 2010.

*[signature: Robert J. Bryan]*

Robert J. Bryan
United States District Judge